**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

MICHAEL L. CAMERON,
Defendant.



**DECISION AND ORDER AND**
**REPORT AND RECOMMENDATION**
18-CR-6058-CJS-JWF

### Preliminary Statement

On April 17, 2018, a federal grand jury charged Michael L. Cameron ("the defendant" or "Cameron") with one count of Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(a). Docket # 19. The Indictment alleges that Cameron was required to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), traveled in interstate commerce from Montana to New York, and, in so doing, failed to update his sex offender registration.

The defendant is currently proceeding pro se. Upon his arrest he requested appointment of counsel and was initially represented by Assistant Federal Public Defender Mark D. Hosken, Esq. Thereafter, alleging a breakdown in communications with Mr. Hosken, the defendant requested that new counsel be appointed. On November 15, 2017 the Court granted the defendant's request and assigned Criminal Justice Act ("CJA") Attorney Scott M. Green Esq. to represent the defendant. Docket # 13.

Extended plea negotiations ensued but were unsuccessful. The defendant subsequently requested that Mr. Green be discharged and that he be permitted to represent himself. After advising the defendant of the pitfalls of self-representation and engaging in a colloquy, the Court permitted the defendant to discharge Mr. Green and represent himself. Docket # 26. The Court suggested that the defendant accept standby counsel to assist him, but the defendant declined.[1]

A motion schedule was established and the Court granted the defendant multiple requests for extensions of time to formulate and file pretrial motions. On August 20, 2018, the defendant moved for the appointment of standby counsel to assist him. See Docket # 52. On August 20, 2018, the Court granted the defendant's request and appointed CJA Attorney Brian Oathout, Esq. as standby counsel for Cameron. See Docket # 54. The defendant filed multiple pretrial motions (Docket ## 42-49, 55, 60, 78). Many of the same arguments and requests for relief are repeated in his motion papers and the Court only addresses each of the defendant's arguments once, notwithstanding that they may appear in various motions. Oral argument on the motions was heard by the undersigned

---

[1] In an appearance before United States District Court Judge Charles J. Siragusa on June 12, 2018, the defendant was encouraged by Judge Siragusa to accept legal representation, but he declined. See Docket # 31.

on October 3, 2018.[2]  An evidentiary hearing was held with respect to the defendant's suppression motion on October 17, 2018.  Docket # 59.  The Court reserved decision as to all of the defendant's motions and requested a copy of the hearing transcript.

## Discussion

The Court will address the merits of each of the defendant's motions as the defendant has styled them in his motion papers.

Motion to Dismiss (Docket # 42):  Mr. Cameron "objects to the exercise of federal jurisdiction of the defendant over his person and his property in this federal court."  Docket # 42, at 1. Essentially, the defendant asserts that the Court does not have personal jurisdiction over him.  Id. at 7.  He also references subject matter jurisdiction but does not make any argument regarding how the Court lacks such jurisdiction over his case.

Personal jurisdiction refers to the power of a court to enter a monetary judgment against a defendant based on his or her "minimum contacts" with the forum.  See, e.g., Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).  Personal jurisdiction is a concept unique to civil cases and exists to respect the "full faith and credit" clause of the U.S. Constitution.  See U.S. Const., Art. IV, § 1. Simply put, Cameron's arguments regarding a supposed lack of

---

[2] During oral argument, the defendant requested that Mr. Oathout be discharged as standby counsel.  The Court declined to grant the defendant's request.

personal jurisdiction are not relevant to this criminal prosecution.

The defendant does not make any discernable substantive argument as to why the Court lacks subject matter jurisdiction over his case, but such an argument is meritless in any event. The "[t]he district courts of the United States" are vested with "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Cameron is charged by Indictment with a violation of 18 U.S.C. § 2250(a) for being required to register under SORNA and then failing to do so when travelling from Montana to New York. Docket # 19. Although he does not argue otherwise, the Second Circuit Court of Appeals has held that SORNA's registration requirement is a valid exercise of Congress's Commerce Clause authority. United Stats v. Guzman, 591 F.3d 83, 89-91 (2d Cir. 2010). This Court is a "district court of the United States." Thus, Cameron is charged with violating a valid "law[] of the United States" and he is being prosecuted in a "district court of the United States." Accordingly, the Court has jurisdiction of the subject matter of this case.

In his motion papers, Cameron sets forth requirements for the issuance of a complaint or indictment but does not identify any defect in the charging documents filed against him or allege that any specific procedural or substantive rule was violated here.

Indeed, nothing in the record demonstrates that there is any error in the issuance of the complaint or the Indictment.  Docket # 42, at 8-12.  Both charging documents are duly signed and the complaint was properly sworn to by an agent and witnessed by the undersigned. Contrary to the defendant's assertions, there was no need for a criminal complaint to be signed by an Assistant United States Attorney.  Hence, this motion to dismiss (Docket # 42) should be denied.

Motion to Dismiss (Docket # 43):  Next, Cameron requests that the Court dismiss his Indictment on the grounds that it failed to identify anyone as having committed a federal crime.  The Court has previously addressed the sufficiency of the Indictment, which explicitly sets forth the federal criminal statutes Cameron is charged with violating.  See Docket # 19.  Under the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."  See Fed. R. Crim. P. 7.  The Indictment here satisfies these requirements.

The defendant also claims, without any support, that the Indictment must be dismissed because New York has not implemented SORNA's registration requirements.  This contention is likewise false.  Guzman, 591 F.3d 83, 93-4 ("However, as a panel of this Court recently held, SORNA creates a federal duty to register with

the relevant existing state registries regardless of state implementation of the specific additional requirements of SORNA."); United States v. Hester, 589 F.3d 86, 92-93 (2d Cir. 2009) (per curiam) ("That SORNA also requires jurisdictions to update and improve their registration programs, and that New York and Florida had not yet met those administrative requirements, does not excuse Hester's failure to meet the registration requirements that SORNA imposes on individual sex offenders and to register with the programs that did exist."). For these reasons, this motion to dismiss (Docket # 43) should be denied.

Motions to Dismiss on Speedy Trial Grounds (Docket ## 44, 78): The defendant makes two separate motions to dismiss the Indictment on the grounds that there has been some "unreasonable delay" in bringing his case to trial, in violation of the Speedy Trial Act.[3] The Court has uncovered no such delay.

Under 18 U.S.C. § 3161(b), the government has 30 days from a defendant's arrest to secure an indictment, unless the Court excludes the time for one or more reasons set forth in the Speedy Trial Act. Cameron was arrested on July 26, 2017. Docket # 2. Thereafter, at the request of the parties, the Court entered an order pursuant to 18 U.S.C. § 3161(h)(7) tolling the Speedy Indictment clock until September 12, 2017. Id. The Court entered

---

[3] The defendant also raises several arguments again regarding apparent defects in the complaint. Having found no such defects above, the Court will not address these arguments again.

additional Speedy Trial exclusions until April 2, 2018 at the request of the parties so that they could discuss a possible plea disposition and for Cameron to be appointed new counsel. Docket ## 9-16, 18. On April 17, 2018, the grand jury indicted the defendant. Between April 2 and April 17, 2018, only 15 days lapsed from the Speedy Indictment clock out of a possible 30 days, rendering the Indictment timely.

Under 18 U.S.C. § 3161(c), the government has 70 days from a defendant's indictment to commence a trial, unless the Court excludes the time. As the government sets forth in its response (Docket # 51), there are at most 11 days that have lapsed under the Speedy Trial clock: seven days from April 17 to April 24, 2018; two days from May 8 to May 10, 2018; and two days from August 6 to August 8, 2018. The rest of the time has been excluded from the Speedy Trial clock at the request of the parties. Docket ## 23, 24, 26, 32, 36.

On August 8, 2018, the defendant filed several of the pretrial motions currently before the Court. All time accruing from the time the motions are filed until the motions are under advisement is excluded from the Speedy Trial clock pursuant to 18 U.S.C. § 3161(h)(1)(D). As the Court explained in its December 13, 2018 order (Docket # 68) and its January 10, 2019 order (Docket # 72), the Court would not deem the defendant's motion under advisement until it had the transcripts from the relevant court appearances.

Therefore, all of the time until February 6, 2019 - when the transcripts were filed - was excluded from the Speedy Trial clock.

On February 6, 2019, the transcripts were filed and the Court deemed Cameron's motions under advisement. Under 18 U.S.C. § 3161(h)(1)(H), the Court has 30 days to render a Report and Recommendation on the defendant's motions. Cameron's motions regarding the Speedy Trial clock (Docket ## 44, 78) should therefore be denied.

Motion to Enter Exhibits (Docket # 45): The defendant moves to enter certain exhibits into evidence. Entry of evidence into the record is a trial issue and will be handled by the trial judge. Cameron's motion is therefore denied without prejudice to renew at trial.

Motion for Proof of All Elements (Docket # 46): Cameron declares, accurately, that an indictment must set forth the elements of a crime. Fed. R. Crim. P. 7 ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."). But he fails to assert that his Indictment failed to list the elements of 18 U.S.C. § 2250(a), the crime he is accused of committing. Notwithstanding the defendant's failure to identify any substantive defect in the Indictment, it is clear that the Indictment here concisely lists the "essential facts constituting the offense charged."

A person violates SORNA when he or she:

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act.

See 18 U.S.C. § 2250.

The Indictment concisely describes each of these elements as they relate to the defendant. Specifically, the Indictment states that Cameron (1) was "required to register under" SORNA; (2) "did travel in interstate commerce, that is, from the State of Montana to the State of New York," and (3) "knowingly fail[ed] to register and to update a registration as required by" SORNA. Docket # 19. For these reasons, the defendant's motion challenging the indictment should be denied.

Motion to Dismiss (Docket # 47): Again, the defendant sets forth several disjointed and confusing citations without any coherent or cohesive argument. The crux of Cameron's argument on this fifth motion to dismiss seems to be directed towards the criminal complaint lodged against him on July 26, 2017 (see Docket # 1). The defendant insists that Senior Inspector Richard Rooney

of the United States Marshals Service did not have the authority to sign the complaint since "that power is vested in the U.S. Attorney." Docket # 47, at 4.

Federal Rule of Criminal Procedure 3 indicates only that the complaint set forth "the essential facts constituting the offense charged" and that it "be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer." All of these requirements were met here. The complaint details the charges against Cameron and was signed under oath before the undersigned. There is no requirement that the complaint be signed by the United States Attorney. That requirement is for indictments, and, as discussed above, the Indictment here was signed by Assistant United States Attorney John J. Field, Esq. on behalf of the United States Attorney.

Cameron also takes issue with this Court's jurisdiction to hear this case, seemingly on the grounds that New York is not a federal territory. He asserts that "[t]he western district of New York [sic], where the crime[s] are alleged to have occurred, is not a land ceded, nor aquired [sic] by the federal government, therefore making that claim, as well as all other claims arising therein, by reason for want of jurisdiction State to territory [sic]." Docket # 47, at 5.

As explained above, Article III, Section 2 of the Constitution provides that federal courts have the power to hear cases arising

under the laws of the United States and where the United States is a party.    Under 18 U.S.C. § 3231, federal courts have exclusive jurisdiction over offenses against the laws of the United States. And the offense of which the defendant is accused, 18 U.S.C. § 2250(a), is a law of the United States, making this Court's jurisdiction to hear this case proper.    Accordingly, this motion to dismiss (Docket # 47) should also be denied.

Motion to Suppress (Docket # 48):  The defendant next asserts that statements he made to the police after his arrest must be suppressed because at the time he made them he had not been advised of his Miranda rights.    Docket # 48, at 2.

To resolve this suppression motion, the Court held an evidentiary hearing on October 17, 2018.    The defendant represented himself at the hearing.    Tr. of Oct. 17, 2018 Hr'g, Docket # 73 ("Tr.").    The government called two witnesses: Monroe County Sheriff's Deputies Amanda Pratt ("Deputy Pratt") and Nermin Hamzic ("Deputy Hamzic").    Deputy Pratt testified that on July 8, 2017, she was monitoring traffic in the "Chili Riga area," a suburb of Rochester, NY.    Tr. at 5.    Deputy Pratt testified that shortly before 4 o'clock in the afternoon, she was surveying license plate numbers and checking them for outstanding warrants.    She ran the license plate number of a gray Nissan, which was traveling directly in front of her, and determined that the license had been suspended for failure to carry insurance.    Tr. at 6.    In light of the

11

suspended license, Deputy Pratt pulled over the vehicle, approached the driver's side window, and asked the driver to produce a license and registration. Tr. 6-7. The driver turned over his Montana's driver's license, which identified him as Michael Cameron with a date of birth of May 14, 1965. Tr. at 7. Cameron claimed that he could not produce a registration because the vehicle belonged to a friend. Tr. at 7.

Deputy Pratt returned to her police car with Cameron's license and ran the license through a New York State Department of Motor Vehicle database, which indicated that Cameron's license was suspended and that he had an arrest warrant pending in another state. Tr. at 7-8. When Deputy Pratt's partner arrived at the scene, the officers approached Cameron's vehicle. The defendant threw the keys out of the vehicle's window and locked the car. Tr. at 8. Deputy Pratt observed a laceration on the defendant's neck and the defendant indicated that he had "just cut himself with a pocket knife and that he wanted to die and to just shoot him." Tr. at 8.

The officers then asked the defendant to step out of the vehicle. Although he was agitated and at first uncooperative, Cameron eventually exited the vehicle. Cameron was handcuffed for officer safety and his own safety. An ambulance and additional police assistance were requested. Tr. at 8, 14. The officers intended on making a mental hygiene arrest based on the defendant's

self-inflicted injury and suicidal ideations. Neither officer read the defendant <u>Miranda</u> rights. Tr. at 9.

Monroe County Sheriff's Deputy Nermin Hamzic ("Deputy Hamzic") responded to Deputy Pratt's request for assistance. Tr. at 17. When he arrived at the scene, Cameron was sitting on the ground handcuffed, crying, and bleeding from his neck. Tr. at 17-18. While they were waiting for the ambulance to arrive, Deputy Hamzic engaged the defendant in conversation "about life in general," in an attempt to relax him and assure the defendant that he would be all right. Tr. at 19. According to Deputy Hamzic, the defendant continued to profess suicidal intentions and refused medical treatment. Tr. at 19.

When the ambulance arrived, Cameron permitted ambulance staff to bandage his wound. Tr. at 19. Deputy Hamzic continued to provide encouraging words to the defendant, although he could not remember the specifics of their conversation. Tr. at 19. Per department policy, because Cameron was cooperative at this point, he was uncuffed and placed in the back of the ambulance. Tr. at 20. While he was in the back of the ambulance and uncuffed, Cameron thanked Deputy Hamzic for his help. He then volunteered to Deputy Hamzic, "I'm wanted and I'm on the run." Tr. at 19-21. At no point did Deputy Hamzic ask any questions to prompt the defendant to say this. Tr. at 19-21. The government intends to use the defendant's statement at trial. <u>See</u> Tr. at 20-21.

A defendant's statements made to law enforcement during a custodial interrogation will be suppressed when made without the benefit of Miranda warnings. See United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004) ("Miranda's warning requirements apply only to 'custodial interrogation.'"). Here, the Court concludes that when the defendant told Deputy Hamzic that he was a fugitive, he was not being interrogated within the meaning of Miranda.

The test for determining whether the conduct of law enforcement agents amounted to "interrogation" is whether the words or actions of law enforcement agents "were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 302 (1980). Thus, the term "interrogation" includes both express questioning or its functional equivalent and includes any "practice that the police should know is reasonably likely to evoke an incriminating response from a suspect." Id. at 300-02. In making this assessment, the Court must consider "the totality of the circumstances of the agents' conduct." United States v. Cota, 953 F.2d 753, 758 (2d Cir. 1992). The determination of whether a statement is likely to elicit an incriminating response "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." Innis, 446 U.S. at 301. However, "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." United

States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997)(internal quotations and citations omitted).

With regard to the defendant's statement discussed above, I find that it was made spontaneously, and not in response to any questioning or conduct by law enforcement that would be reasonably likely to elicit an incriminating response.  While the defendant may have felt that his conduct in the car and ambulance or the situation in general deserved an explanation to Deputy Hamzic, the choice to offer an explanation was his and was not the product of interrogation or its functional equivalent.  Indeed, the testimony adduced at the hearing demonstrates that the defendant's statement was entirely unprompted and not in response to any question. Accordingly, the spontaneous statements should be admissible. Innis, 446 U.S. at 300 (volunteered statements are admissible in evidence and are not subject to Miranda safeguards); United States v. Figueroa, 300 F. App'x 93, 95 (2d Cir. 2008) (holding that the district court did not err in finding that the statements at issue were not "made in response to express questioning or its functional equivalent" since "[a]ll three statements were made while the officers were going about their routine tasks in conducting a search, securing a crime scene, and making an arrest"); United States v. Gelzer, 50 F.3d 1133, 1138 (2d Cir. 1995) (statements defendant volunteered while being transported in police car were not the product of interrogation and were admissible); United

States v. Mitchell, No. 11-CR-6019, 2012 WL 4325462, at *2 (W.D.N.Y. Aug. 16, 2012) ("While Mitchell may have felt the discovery of drugs and a firearm during the search of the residence deserved an explanation in order to exculpate Ms. Smith from criminal liability, the choice to offer an explanation was his and was not the product of interrogation or its functional equivalent."), adopted by 2012 WL 4324923 (W.D.N.Y. Sept. 20, 2012); United States v. Hemingway, No. 05-CR-6108L, 2007 WL 499470, at *1 (W.D.N.Y. Feb. 13, 2007) (statements made by defendant seeking to exculpate brother after narcotics found in kitchen during execution of search warrant were spontaneous under Innis). Accordingly, it is my Report and Recommendation that the defendant's motion to suppress a statement be denied.[4]

    Motion for Evidentiary Hearing (Docket # 49): Despite how it is titled, Cameron's next motion seems to have nothing to do with an evidentiary hearing. Rather, the defendant requests discovery, as well as an investigator, and subpoenas for all witnesses the defendant intends to call at trial.

    To the extent Cameron seeks an order requiring the government to disclose all evidence it intends to use against him pursuant to Federal Rule of Evidence 404, that request is granted insofar as the government should provide such material no later than two weeks

_____

[4] Because the Court recommends denial of suppression on the basis that Cameron was not being interrogated, it will not address the question of whether the defendant was in custody while in the back of the ambulance.

before trial or the pretrial conference, whichever is earlier. The government should also be aware of its responsibilities under Brady v. Maryland, 373 U.S. 83 (1963). Because it does not appear that any specific Brady request is at issue at the present time, the application is therefore denied without prejudice to renew should a specific Brady issue arise.

Cameron's request for an investigator is denied at this time. A defendant seeking CJA funds "has the burden of satisfying the district court that the services are reasonably necessary" and "must articulate a reasonable basis for the requested services." United States v. Sanchez, 912 F.2d 18, 22 (2d Cir. 1990) (quoting another source). The defendant has not set forth any reasons necessitating an investigator. See United States v. Djibo, 730 F. App'x 52, 57 (2d Cir. 2018) (summary order) (finding that defense counsel had not "identify specific avenues of investigation that would require court appointment of a private investigator" for indigent criminal defendant under the CJA). Cameron's request for witness subpoenas is an issue for trial and is therefore denied without prejudice to renew at the pretrial conference.

Motion to Move Exhibits Into Evidence (Docket # 55): In this motion, the defendant again moves for certain evidence to be entered into the record. This is an issue reserved for the trial judge and accordingly, the defendant's motion is denied without prejudice to renew.

<u>Motion for Summary Judgment (Docket # 60)</u>: Finally, Cameron moves for summary judgment. At the evidentiary hearing on October 17, 2018 (<u>see</u> Docket # 59), the Court accepted the defendant's motion for filing but notified him that a motion for summary judgment is a case-dispositive motion in a civil case. <u>See</u> Fed. R. Civ. P. 56. There is no summary judgment mechanism in the criminal context. Rather, a defendant may make a motion to dismiss the indictment, as the defendant has done here in multiple motions.

Nevertheless, as the Court explained to Cameron on the record, it will treat the defendant's motion as one for dismissal. Although the Court agreed to consider this motion, Cameron's arguments are difficult to decipher or understand. He identifies a number of legal theories, most of which are either not relevant to this criminal prosecution, have no merit, or have been raised in previous motions to dismiss. For example, the defendant argues that his rape conviction and sentence – which, according to the government, gave rise to his requirement to register under SORNA – were wrongly decided and that his classification as a sex offender was incorrect. This case is not an appeal of his underlying sentence or conviction. The defendant is not being prosecuted for the original rape offense. Instead, he is being prosecuted for his alleged failure to register as a sex offender as a result of his conviction and sentence for rape. While Cameron may have an opportunity at trial to prove whether he was a sex

offender required to register under SORNA, at this stage his arguments do not entitle him to dismissal as a matter of law.

Likewise, Cameron's contention that he cannot be tried in this Court because he did not willfully consent to its jurisdiction is without merit. United States v. Dewar, No. 06 CR 311 (SCR), 2008 WL 11422627, at *2 (S.D.N.Y. Feb. 21, 2008) ("Contrary to the defendants' apparent belief, no law requires that a defendant consent to criminal proceedings in order to be subject to the court's jurisdiction."); see United States v. Mitchell, 405 F. Supp. 2d 602, 604 (D. Md. 2005) ("If this were the case, it is hard to imagine that any indicted defendant would 'consent' to any proceedings against him, and the entire federal criminal code would be pointless."). So too is the defendant's assertion that the complaint was not sworn under penalty of perjury and that the government improperly used a writ of habeas corpus ad prosequendum. Docket # 60, at 3, 17. Not only are his contentions insufficient to warrant the relief he seeks, they are simply not true. As explained above, the complaint and Indictment here were all properly issued. The defendant's other arguments are similarly without merit.

## Conclusion

For the reasons stated above, it is my Report and Recommendation that the defendant's pretrial motions (Docket ## 42-44, 46-48, 60, 78) should be **denied**. It is my Decision and

19

Order that the defendant's motions to enter exhibits (Docket ## 45, 55) and his motion for an evidentiary hearing (Docket # 49) – which is really a motion for an investigator and for subpoenas – are **denied without prejudice to renew**, except insofar as they request disclosure in accordance with Federal Rule of Evidence 404. To the extent the defendant moves regarding a <u>Brady</u> violation or for relief identified as best determined by the trial judge, those motions are likewise **denied without prejudice to renew**.

    **SO ORDERED.**

                                              _____
                                              JONATHAN W. FELDMAN
                                     United States Magistrate Judge

Dated:      March 4, 2019
             Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:     March 4, 2019
           Rochester, New York

---

[1] The parties are advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).